# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MANPOWER INC.,**
        **Plaintiff,**

v.                                                                    Case No. 08C0085

**INSURANCE COMPANY OF**
**THE STATE OF PENNSYLVANIA,**
        **Defendant.**

## DECISION AND ORDER

Plaintiff Manpower, Inc. brings this insurance-coverage action against the Insurance Company of the State of Pennsylvania ("ISOP"). Before me now is ISOP's motion for summary judgment on "valuation" issues.

On June 15, 2006, a portion of an office building located in Paris, France – the "rue de la Victoire" building – collapsed. At the time of the collapse, Manpower's subsidiary, Right Management ("Right"), leased office space in the building. Although the collapse did not damage the part of the building where Right's offices were located, it damaged the building's foundation and rendered the entire building uninhabitable for an extended period, forcing Right to relocate to temporary office space. In December 2006, Right entered into a lease agreement for permanent replacement office space in a new building, the "avenue d'Iena" building. Right began the process of building-out and moving into the avenue d'Iena offices in January 2007, and its move was complete by June 2007. Between the time of the collapse and the completion of Right's move into the avenue d'Iena building, the rue de la Victoire building remained uninhabitable, and Right was unable to retrieve any

of its business personal property (such as furniture) from the Victoire building. Thus, Right purchased replacement property for use at its avenue d'Iena offices. Right also incurred expenses for "improvements and betterments" at the d'Iena offices – flooring, walls, ceilings, light fixtures, doors and other interior finishes. These improvements and betterments replaced those left behind at the Victoire building.

Because Right is Manpower's subsidiary, Manpower filed a claim under its "all risk" policy with ISOP for losses incurred as a result of the collapse, and when ISOP denied coverage Manpower commenced this suit. A substantial issue in the case was whether the collapse caused a "direct physical loss" of Right's business personal property and improvements and betterments within the meaning of the policy. (Policy [Docket #153-3] § 10.) In ruling on the parties' motions for summary judgment on this issue (see Docket #79), I determined that the collapse did indeed cause a direct physical loss of these items and that Manpower was entitled to coverage for them under two different types of coverages available under the policy: (1) real-and-personal-property coverage (Policy § 9.A.), and (2) extra-expense coverage (Policy § 9.D.). However, I left calculating the amount of Manpower's loss under these provisions to further proceedings. ISOP's present motion seeks to resolve certain issues concerning the amount of the loss.

The parties agree that although coverage for business personal property and improvements and betterments is (as a result of my prior ruling) available under both the real-and-personal-property provisions and the extra-expense provisions, Manpower cannot recover the same loss twice – once as an extra expense and again as a loss of real and personal property. The difference between the two coverages is that extra-expense coverage is limited to costs incurred during the "period of recovery" that are over and above

2

the costs that would have been incurred had there been no loss, whereas coverage under the real-and-personal-property provisions is not limited to the period of recovery. (See Policy § 9.I(1)(a).) Because coverage for real and personal property is broader than coverage for extra expenses, I will first value Manpower's loss as a loss of real and personal property. If I determine that full recovery is not available under the real-and-personal property provisions, I will then consider whether Manpower is entitled to additional recovery under the extra-expense provisions.

In quantifying its loss, Manpower seeks the replacement value of Right's personal property and improvements and betterments – that is, the cost of purchasing new property and fitting Right's avenue d'Iena offices with improvements and betterments. The total replacement cost for these items was $2,914,396. ISOP's position is that the most Manpower can recover is the rental value of temporary replacement property for the period of time in which the property inside the Victoire building was inaccessible.

To resolve this issue, I begin with the policy language. The policy specifies a method for valuing "office furniture, fixtures, and equipment and improvements and betterments." (Policy § 13.A.) Under this method, the value of property that has been "damaged or destroyed by an insured peril" is measured by the cost of repairing, rebuilding or replacing the property, whichever is cheapest. However, in the event of "loss or damage to such property that is not repaired, rebuilt or replaced," recovery is limited to the actual cash value of the property at the time of loss.

In the present case, Manpower has "replaced" the Victoire property with the property it purchased for use at avenue d'Iena, and so Manpower's loss does not fall within the part of the valuation provision specifying that recovery for property that is not repaired, rebuilt

3

or replaced is the actual cash value of the property at the time of loss. However, as ISOP points out, the Victoire property was not "damaged or destroyed" during the collapse, and so it is not immediately apparent that Manpower is entitled to recover the replacement value of the property under the first provision quoted in the preceding paragraph. Nonetheless, I conclude that the parties did not intend the phrase "damaged or destroyed" to preclude recovery of the replacement cost of property that has been lost but not damaged or destroyed. Otherwise, the policy would not contain a provision for valuing property that has been stolen and replaced by the insured, since property can be stolen without being "damaged or destroyed." And as noted in my decision on the parties' initial motions for summary judgment, ISOP does not contend that the policy does not cover theft. Thus, the phrase "damaged or destroyed" must be interpreted to include property that has been lost but not damaged or destroyed.

That this is the correct interpretation of the policy is confirmed by noting that the policy uses the phrases "damaged or destroyed" and "loss or damage" interchangeably. The valuation provision begins by stating that property that has been "damaged or destroyed" is valued at replacement cost (or the cost to repair or rebuild the property, if that would be cheaper than replacing it). Later, the provision states that in the event of "<u>loss or damage</u> to such property that is not repaired, rebuilt or replaced," recovery is limited to actual cash value. The word "damage" appears in both of these statements, but one statement uses "destroy" and the other "loss." It would be absurd to interpret the policy as meaning that property that has been "lost" but not replaced is valued at actual cash value while property that has been "destroyed" but not replaced is valued at full replacement cost. What reason would justify such a distinction? To avoid this absurdity, the word "loss"

4

must be interpreted to include "damage," and the word "damage" must be interpreted to include "loss." Accordingly, since Manpower replaced the business personal property and improvements and betterments it lost as a result of the collapse, Manpower's loss will be measured by the cost of the replacement property.[1]

Although ISOP contends that Manpower's loss should be measured as the loss of use of the property in the Victoire building, not as a permanent loss of the property, it does not point to any policy provision supporting the proposition that a loss of the kind sustained by Manpower is measured on a loss-of-use basis. ISOP does cite cases stating that loss-of-use damages should be determined by the rental value of similar property during the period of loss,[2] but these cases would come into play only after ISOP established that the proper measure of damages in this case is loss of use rather than permanent loss. But again, the policy does not contain provisions for valuing lost real and personal property on a loss-of-use basis, and so the loss must be measured by either replacement cost or actual cash value. Certainly one could imagine a policy being drafted in a manner that would limit Manpower to loss-of-use damages in a situation such as this one, but ISOP has not shown that its policy was drafted that way.

Accordingly, Manpower is entitled to recover the replacement cost of the business personal property and improvements and betterments lost in the collapse of the Victoire

---

[1] As noted, the policy states that recovery will be limited to the cost of repairing or rebuilding property if that would be cheaper than replacing it. However, there can be no dispute that replacing the property was Manpower's only option. It could not have repaired or rebuilt the property trapped inside the Victoire building any more than it could have repaired or rebuilt property that had been stolen.

[2] Advanced Network, Inc. v. Peerless Ins. Co., 119 Cal. Rptr. 3d 17, 24 (Ct. App. 2010); Coulter v. CIGNA Prop. & Cas. Co., 934 F. Supp. 1101 (N.D. Iowa 1996).

building. Because this will provide Manpower with full reimbursement for its property loss, I do not separately consider how the loss would be valued under the extra-expense provisions.

Before concluding, I dispose of ISOP's argument that Manpower's recovery is limited by the "leasehold interest" section of the policy. (Policy § 9.F.) This section is a form of coverage for loss caused when a covered peril results in the termination of a lease on property rented by the insured. This section is <u>not</u> a limitation on other forms of coverage available under the policy, and resort to this provision is necessary only when a loss is not covered under other policy provisions. The reason ISOP seeks to invoke the leasehold-interest section is that coverage under that section is subject to a $500,000 sublimit rather than the policy limit of $15 million.

ISOP contends that the leasehold sublimit applies to Manpower's claim for the replacement cost of the rue de la Victoire improvements and betterments because the leasehold-interest section covers "improvements and betterments to real property during the unexpired term of the lease which is not covered under any other section of [the] policy." (Policy § 9.F.(1)(b).) But this argument is very nearly frivolous, since the provision by its terms does not apply when a loss is covered by another section of the policy, and as I have already determined Manpower is entitled to coverage under the real-and-personal-property section of the policy, which covers "all real and personal property (<u>including improvements and betterments</u>)." (Policy § 9.A.(1) (emphasis added)). Thus, the leasehold-interest section and its $500,000 sublimit do not apply to Manpower's claim.

In accordance with the above rulings, **IT IS ORDERED** that ISOP's motion for summary judgment on valuation issues is **DENIED**. In addition, I conclude that as a matter of law Manpower is entitled to recover as damages for the loss of property at rue de la Victoire the cost of the business personal property and improvements and betterments Right purchased for use at its avenue d'Iena offices.

Dated at Milwaukee, Wisconsin, this 9th day of June, 2011.

/s_____
LYNN ADELMAN
District Judge