# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MANPOWER INC.,**
        **Plaintiff,**

        v.                                                     Case No. 08C0085

**INSURANCE COMPANY OF**
**THE STATE OF PENNSYLVANIA,**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff Manpower, Inc. brings this insurance-coverage action against the Insurance Company of the State of Pennsylvania ("ISOP") over losses sustained when a building containing the offices of Manpower's French subsidiary, Right Management ("Right"), partially collapsed. In ruling on the parties' various summary judgment motions, I determined that as a matter of law Manpower is entitled to coverage for business-interruption losses, extra-expenses, and loss of business personal property and improvements and betterments. I also determined that the measure of Manpower's loss of business personal property and improvements and betterments is the cost of replacing the property. This case is scheduled for trial, at which the only issue will be the amount of Manpower's loss. ISOP has filed motions on two issues relating to the trial – whether Manpower can call ISOP's expert witness during its case-in-chief, and whether evidence that Manpower has a "local French policy" will be admitted at trial.

The first issue relates to Manpower's claim for business-interruption coverage. During earlier proceedings, I ruled that the opinion of Manpower's forensic accountant as

to the amount of the business-interruption loss is inadmissible because it does not meet the requirements of Federal Rule of Evidence 702. This prompted ISOP to move for summary judgment on the ground that, without an expert, Manpower cannot prove its business-interruption damages to a reasonable certainty. Although Manpower agrees that without expert testimony it cannot establish its damages to a reasonable certainty, it contends that summary judgment is inappropriate because it can establish the amount of its damages by calling ISOP's expert witness, Clifton Lewis, adversely. ISOP responds by arguing that Manpower should not be permitted to call Lewis adversely during its case-in-chief.

There is no hard-and-fast rule forbidding a party from calling an opposing party's expert during his case-in-chief, see Kerns v. Pro-Foam of S. Ala., Inc., 572 F. Supp. 2d 1303, 1309 (S.D. Ala. 2007), and so ISOP argues that I should prohibit Manpower from calling Lewis under Federal Rule of Evidence 403, which gives me discretion to exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ISOP contends that allowing Manpower to call Lewis would result in unfair prejudice because it would allow Manpower to free-ride on ISOP's efforts in retaining Lewis and having him form opinions in this case. This is a misunderstanding of "unfair prejudice" as used in Rule 403, which means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note (1972). ISOP does not contend that Manpower's calling Lewis at trial would have a tendency to suggest to jurors that they render a decision on an improper

basis, and Rule 403 is not meant to exclude relevant evidence on the ground that the proponent of the evidence procured it through arguably unfair means. Thus, I will not prevent Manpower from calling Lewis at trial during its case-in-chief.

As an alternative argument, ISOP contends that Lewis's testimony would not allow a jury to determine the amount of Manpower's business-interruption loss to a reasonable certainty. ISOP tells us that if called by Manpower at trial Lewis will testify that it is his opinion that the amount of Manpower's business-interruption loss is zero. However, in one of his reports, Lewis appears to value Manpower's business-interruption loss at $1,036,043. Although Lewis's report would likely be hearsay and not itself admissible for the truth of the matter asserted, the report raises questions as to what Lewis would actually say if called by Manpower during its case-in-chief. Because when ruling on a motion for summary judgment the evidence must be viewed in the light most favorable to the nonmovant, I cannot assume that Lewis's testimony will be that the amount of the loss is zero.

Still, Lewis's conclusion in his report about the amount of the business-interruption loss was tentative, and he later prepared a report in which he stated that the amount of the loss was zero. Although for purposes of summary judgment I cannot assume that Lewis's trial testimony will be consistent with his later report, I find it hard to believe that Manpower wants to prepare for a trial on the business-interruption claim when the most likely outcome is that I direct a verdict for ISOP after Lewis testifies that the amount of the loss is zero. Thus, I will hold a status conference to discuss whether Manpower insists on having a trial on the business-interruption claim and, if it does, determine exactly what Manpower intends to do when it gets Lewis on the witness stand.

The second issue raised by ISOP's motions is its intent to introduce evidence at trial that Manpower has a French insurance policy that may need to be exhausted before coverage under the ISOP policy is available. The ISOP policy is a "difference in conditions" policy, which means that it is a form of "wrap around" or "gap" insurance designed to cover risks not fully insured under other policies. Under such a policy, coverage is not available when one of the insured's other policies covers the loss.

The other policy at issue in the present case is a French policy issued by AIG Europe to Right Management. Following the collapse, Right filed a claim with AIG Europe. When AIG Europe denied the claim, Right initiated coverage litigation in France. That litigation is ongoing. ISOP's position in its present motion is that recovery under the difference-in-conditions policy will not be triggered until the extent of coverage available to Right under the French policy has been resolved through the French litigation. Manpower seems to concede that it cannot recover the same loss under both the ISOP difference-in-conditions policy and the AIG Europe primary policy, and that therefore any loss recovered in this case will have to be reduced by any amounts recoverable under the primary policy. However, Manpower contends that because AIG Europe has already denied coverage under the primary policy, Manpower can recover the entire amount of its loss under the ISOP policy. But as noted, Manpower and Right are continuing to seek coverage under the primary policy, and so at this point I cannot conclude that recovery under the primary policy is impossible.

Manpower also contends that ISOP has raised the availability of coverage under the primary policy too late, and it seems to suggest that ISOP has forfeited its right to a reduction in damages to the extent of any recovery available under the primary policy.

4

However, ISOP pleaded the primary policy as an affirmative defense (Second Amended Answer [Docket #72] ¶¶ 30-34), and Manpower has not moved for summary judgment on that affirmative defense. So the defense has not been forfeited, and it will need to be addressed before entry of final judgment. The parties should be prepared to discuss how to handle this defense at the status conference scheduled below.

**THEREFORE, IT IS ORDERED** that a status conference regarding the two issues discussed in this order will be held on **June 23, 2011 at 1:30 p.m.**

Dated at Milwaukee, Wisconsin, this 9th day of June, 2011.

/s_____
LYNN ADELMAN
District Judge