# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MANPOWER INC.,**
            **Plaintiff,**

            **v.**                                **Case No.  08-C-0085**

**INSURANCE COMPANY OF**
**THE STATE OF PENNSYLVANIA,**
            **Defendant.**

---

## DECISION AND ORDER

This action arises out of the collapse of an office building in Paris, France.  Right Management, a subsidiary of Manpower, Inc., leased office space in the building at the time of the collapse, and Manpower seeks insurance coverage from the Insurance Company of the State of Pennsylvania ("ISOP") for the losses Right Management sustained.  In the present opinion, I address an issue involving the interplay between ISOP's policy and a policy issued by another insurance company, AIG-Europe, which is not a party to this case.[1]

ISOP's policy is a "difference in conditions" ("DIC") policy, which is a kind of policy that United States companies often purchase when they have operations in foreign countries.  Typically, a company will purchase local policies from insurers in each of the countries in which it operates and then a DIC policy from a United States insurer.  The purpose of the DIC policy is to make sure that the company has coverage at all of its

---

[1]This issue is presented through two motions: ISOP's motion in limine and request for a stay (Docket #150) and Manpower's motion for interim judgment (Docket #177).

foreign locations that is at least as broad as the coverage provided by a typical United States property policy. See LeRoy Utschig, International Difference in Conditions, Rough Notes, Jan. 2000, at 60, 60. When a loss occurs, the insured's first resort is to the local policy, but if the loss is not covered under the terms of the local policy, the insured turns to the DIC policy. In the present case, the local policy is an AIG-Europe policy that covers Right Management's operations in France.[2]

Following the collapse, Right Management filed a claim with AIG-Europe for over €8 million. The claim involved property losses and business-interruption losses. AIG-Europe determined that coverage under the local policy was limited to "lack of access" coverage, to which a $250,000 sublimit applied. Manpower then sought to recover the rest of its claim from ISOP under the DIC policy, which had a policy limit of $15 million. ISOP determined that coverage under the DIC policy was limited to "civil authorities" coverage, to which a $500,000 sublimit applied. ISOP thus paid Manpower $250,000 (the difference between coverage under the DIC policy and the AIG-Europe policy) and then closed its file.

Manpower believed that under the DIC policy it was entitled to coverage up to the full policy limits. It thus filed the present action against ISOP. After the litigation had been underway for some time, the parties filed cross-motions for summary judgment on the issue of whether the $500,000 sublimit applied. I determined that it did not, and that therefore Manpower was entitled to coverage up to the full policy limits.

After I made this ruling, ISOP began to call attention to the AIG-Europe policy, arguing that Manpower could not establish its right to payment under the DIC policy until

_____

[2]Both AIG-Europe and ISOP are affiliated companies within the AIG family, but they are distinct legal entities.

2

Right Management exhausted coverage under the local policy. Until ISOP raised this issue, Manpower had not filed suit against AIG-Europe over its handling of the claim. However, once ISOP took this position, Manpower caused Right Management to add AIG-Europe as a party to a lawsuit pending in France involving various disputes relating to the collapse of the office building. That lawsuit is ongoing, and as far as I know no end is in sight. ISOP's position is that until the French court establishes AIG-Europe's obligations under the local policy, Manpower cannot show that there is a difference in conditions between the local policy and the ISOP policy that would trigger DIC coverage. ISOP asks that this case be stayed pending resolution of the French proceedings.

To resolve this issue, I turn to the policy language, which provides in relevant part as follows:

> Subject to all other terms and conditions set forth herein, coverage under this policy applies when the perils and/or definitions and/or conditions set forth herein . . . are broader in meaning or scope or number of perils than those of specific primary policies.
>
> . . . .
>
> Coverage under this policy shall apply as primary insurance when any of the perils insured against herein are not insured under a policy of primary insurance. This policy does not insure against perils as defined and insured under primary insurance to the extent of recovery thereunder.

(ISOP Policy § 26.)[3] In accordance with the first quoted paragraph, to establish its right to coverage, Manpower must establish that ISOP's policy is "broader in meaning or scope or number of perils" than the AIG-Policy. In other words, Manpower must establish a difference in conditions between the local policy and the DIC policy. Manpower contends

---

[3]The ISOP policy is in the record at various places, most recently as Exhibit 1 to the August 11, 2011 Affidavit of Jeffrey S. Weinstein (Docket #182-1).

3

that a difference in conditions was established once AIG-Europe closed its file and ISOP began making payments under the DIC policy. ISOP contends that a difference in conditions cannot be established until the French court determines the scope of coverage under the local policy.

I conclude that the policy language does not support either party's position. The policy requires Manpower to show that a difference in conditions exists, and to do that Manpower must compare the local policy to the DIC policy and show that the DIC policy is broader than the local policy. Whether the DIC policy is in fact broader is a question of law that can be resolved by this court. It does not matter that AIG-Europe initially denied the majority of the claim, or that ISOP initially agreed with AIG-Europe's interpretation of the local policy. The insurers' own interpretations of the relevant policies are not dispositive.[4] Similarly, nothing in the DIC policy states that Manpower must exhaust coverage under the local policy by taking legal action against AIG-Europe.[5] All that

---

[4]Manpower accuses ISOP of taking inconsistent coverage positions, but I do not agree with this characterization. At the claims-adjustment stage, both AIG-Europe and ISOP believed that only limited coverage was available under the local policy and the DIC policy. Manpower disagreed, but initially it chose to challenge only ISOP's coverage determination in court. When I ruled that the scope of coverage under the DIC policy was broader than ISOP contended, ISOP was within its rights to take the position that this meant that coverage under the local policy was likewise broader than AIG-Europe contended.

[5]ISOP cites Sherwin-Williams Co. v. Ins. Co. of Penn., 105 F.3d 258 (6th Cir. 1997), for the proposition that Manpower cannot establish its right to coverage under the DIC policy until it establishes the amount of coverage available under the AIG-Europe policy through legal action against AIG-Europe. But Sherwin-Williams does not hold that a policyholder must bring legal proceedings against a primary insurer before seeking coverage under a DIC policy. It holds only that the policyholder must establish that the amount of coverage available under the primary policy is less than the amount available under the DIC policy, and that a "mere denial of coverage" by the primary insurer does not automatically establish that coverage under the primary policy is unavailable. Id. at 262-

4

Manpower must do is show that the DIC policy is broader, and that is something that can be done in this action without the presence of AIG-Europe.[6]

Manpower points to language in the difference-in-conditions provision stating that the DIC policy "does not insure against perils as defined and insured under primary insurance to the extent of recovery thereunder." Manpower argues that the "to the extent of recovery" language means that DIC coverage is available so long as the insured has not actually received payments under the local policy, whether or not the DIC policy is in fact broader than the local policy. Manpower then notes that it has not actually received more than $250,000 from AIG-Europe, and that therefore ISOP must cover the rest of the claim. I do not agree with Manpower's interpretation. Although the "to the extent of recovery" clause is not a model of clarity, it would be absurd to interpret it as meaning that DIC coverage is available whenever the insured has not obtained payment from the primary insurer. Such an interpretation would allow the insured to simply bypass the primary insurer altogether and file a claim directly under the DIC policy and then claim that coverage is owed under the DIC policy because there has been no recovery from the primary insurer. And this would defeat the whole point of DIC coverage, which is to provide coverage when coverage is not available under the primary policy.

---

63. I agree with this holding but see no reason to require that the policyholder file a lawsuit against the primary carrier. Aside from the fact that the policy language does not support such a requirement, it may be abundantly clear that there is no coverage under the primary policy, and that therefore a suit against the primary carrier would be frivolous.

[6]Although Manpower is not required to establish the scope of coverage under the local policy by filing a lawsuit against AIG-Europe, that may be the most prudent course. Although I can decide whether ISOP's policy is broader than AIG-Europe's in this action, my ruling can bind only ISOP, and thus if I determine that AIG-Europe's policy is as broad as ISOP's, Manpower will not be able to enforce my determination.

5

Accordingly, Manpower cannot recover against ISOP until it establishes that ISOP's policy is broader than AIG-Europe's. It can do this either by asking that I compare the two policies and decide whether ISOP's is broader, or by establishing the extent of coverage available under the AIG-Europe policy through the litigation in France.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that Manpower's motion for judgment (Docket #177) is **DENIED**.

**IT IS FURTHER ORDERED** that ISOP's motion in limine regarding the local policy (Docket #150) is **GRANTED IN PART** and **DENIED IN PART**.

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **September 27, 2011 at 1:30 p.m.** The parties must call into the court for the conference as follows: dial access number 1-877-336-1839. You will be prompted for an access code (4144803) and a security code (1234). Once that information is entered participants will be put on hold until we access the call.

Dated at Milwaukee, Wisconsin, this 6th day of September, 2011.

s/_____
LYNN ADELMAN
District Judge